**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1809-24

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ERNEST WILLIAMS,
a/k/a EARNST WILLIAMS,

      Defendant-Appellant.

_____

Submitted May 27, 2026 – Decided July 16, 2026

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-03-0574.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Deputy Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Ernest Williams appeals from an October 30, 2024 order denying his petition for post-conviction relief (PCR). He argues the PCR court erred in determining he had failed to show his trial counsel provided ineffective assistance. Alternatively, he contends he should have been accorded an evidentiary hearing. The record and law do not support defendant's arguments and, accordingly, we affirm.

I.

On July 22, 2012, Brian Schiavetti was shot and killed in a hallway of an apartment building in Montclair. Through investigation and witness interviews, the State learned that Schiavetti had driven to Montclair to purchase Oxycodone from defendant, defendant and Schiavetti had gone into the apartment building to make the exchange, shortly thereafter shots were heard, defendant fled, and when police responded they found Schiavetti's body lying in the hallway with gunshot wounds to the back of his head and abdomen. Schiavetti was later pronounced dead, and an autopsy concluded that he had died because of the gunshot wound to his head.

Defendant was indicted for seven crimes: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two); first-degree robbery, N.J.S.A. 2C:15-1 (count three);

2

second-degree conspiracy to commit armed robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(b) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count five); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six); and third-degree conspiracy to possess controlled dangerous substances with intent to distribute, N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-10 (count seven).

At trial, the State presented compelling evidence that defendant had fatally shot and robbed Schiavetti. The evidence included several witnesses who explained the background regarding how Schiavetti arranged to meet defendant in Montclair to purchase fifty Oxycodone pills for $900.00, defendant had convinced Schiavetti to go into an apartment building to exchange the money for pills, and defendant thereafter told two witnesses that he had shot and robbed Schiavetti. The State's evidence included testimony from C.G. (Charles), a friend of Schiavetti, J.P. (John), defendant's neighbor, and R.W. (Robin), defendant's cousin.[1]

John testified that in 2012 he lived on the same street as defendant and they had known each other for about seven years. During the afternoon of July

---

[1]  We use initials and fictitious names to protect the privacy interests of the witnesses.

22, 2012, defendant called John and told him that he had "Roxys" (Oxycodone) for sale and asked if John knew anyone who wanted to buy the pills. John was a classmate of Schiavetti's at Villanova University and he called Schiavetti and told him about the pills for sale. John then gave defendant Schiavetti's phone number.

Charles explained that on July 22, 2012, he and several other friends were hanging out with Schiavetti at a home in Connecticut. That afternoon, Schiavetti got a call and thereafter Charles drove Schiavetti to Montclair to purchase Oxycodone. In route, they called the seller who directed them to meet him on Williams Street in Montclair. When Charles and Schiavetti arrived, they met a man, later identified as defendant. Defendant got into Charles' jeep and directed them to drive up the street to an apartment building at 25 Williams Street. Thereafter, defendant convinced Schiavetti to go into the building with him to make the exchange of money for the Oxycodone pills.

Shortly after Schiavetti and defendant went into the building, Charles heard two gunshots. He called Schiavetti's cell phone, but Schiavetti did not answer. Fearing for his own safety, Charles "drove away frantically" and called the police. The following day, Charles gave a statement to the police and identified defendant in a photo array.

4

John testified that on the evening of the shooting, he met defendant at Robin's home. When John asked defendant, "what's going on?" defendant stated he "f***ed up" and "shit went wrong." Defendant then told John he had brought a gun to the transaction, "tried robbing [Schiavetti]," "they … tussl[ed,] … [Schiavetti] reached for the gun," defendant "shot down on [Schiavetti's] leg," and then fired a second shot. Defendant also told John that he never had any drugs to sell, he took money from Schiavetti, and he threw away the gun after the shooting. Defendant also showed John a wad of money.[2]

John's testimony was corroborated by Robin's testimony. At trial, Robin explained that at approximately 7:30 p.m. on July 22, 2012, defendant had arrived at her house by taxi and asked to use her phone. After defendant used the phone, three or four other men arrived outside her house and spoke with defendant. As Robin went into the house, she heard defendant tell the men "I robbed him." Defendant then spent the night at Robin's house, and the next day told her that he "robbed a [Caucasian] man in Montclair and they got into a little scuffle and that he shot him."

---

[2] John had been charged in count seven with conspiracy to sell narcotics. Before trial, he pled guilty and agreed to cooperate with the State.

A-1809-24

Robin also explained that several days after the shooting, she had given a statement to the police in which she explained defendant had told her that he was supposed to meet a man to make a drug transaction, he did not have the drugs, and the plan was to rob the person. She also stated defendant had told her that a scuffle ensued and defendant had shot the person. Finally, she told the police that she saw defendant count out $400 in cash and defendant told her he got the money from the guy he shot.

The State's evidence also included DNA analysis and information from Schiavetti's cell phone. When Schiavetti was found in the hallway, he had a fresh bite mark on his arm. DNA analysis from that bite mark was compared to defendant's DNA and an expert at trial testified that defendant's DNA was present in the bite mark. The State also obtained a warrant to search Schiavetti's cell phone. Text messages found in Schiavetti's cell phone showed that defendant had been communicating with Schiavetti as Schiavetti was driving to meet defendant in Montclair before the shooting.

Defendant elected to testify at trial. He acknowledged he was with Schiavetti at the time of the shooting but claimed Schiavetti had pulled out a gun during the drug exchange. Defendant stated he dove on Schiavetti, they wrestled, and during the wrestling he bit Schiavetti on his right forearm.

6

Defendant claimed that he was in fear for his life, and during the struggle Schiavetti got shot in the leg, the gun fired a second time, and then Schiavetti fell to the ground. Defendant went on to testify that when Schiavetti fell he picked up the gun and ran out the back door. Defendant denied that he had planned to rob Schiavetti or take his money.

Additionally, defendant testified that following the shooting, he told John and Robin the same thing. In that regard, he claimed he told both John and Robin the "guy" tried to pull a gun on him, they wrestled, he "killed him," but "[i]t was a[n] accident." Defendant denied telling John that he tried to rob Schiavetti. He also told both John and Robin that the police were "gonna think differently."

After hearing the evidence, a jury found defendant guilty on all the charges, except on the charge of murder (count one) they found defendant guilty of the lesser included offense of first-degree aggravated manslaughter. Thereafter, defendant was sentenced to an aggregate prison term of fifty years, with periods of parole ineligibility and parole supervision.

Defendant appealed his convictions and sentence. In 2018, we reversed defendant's conviction and remanded for a new trial. State v. Williams, No. A-2256-15 (App. Div. May 21, 2018) (slip op. at 10). The following year,

however, the New Jersey Supreme Court reversed our decision, reinstated defendant's convictions, and remanded the matter to us to consider the sentencing issues. State v. Williams, 240 N.J. 225, 228, 238 (2019). After considering the sentencing issues, we remanded the matter to the trial court for resentencing. State v. Williams, No. A-2256-15 (App. Div. Jan. 30, 2020) (slip op. at 6). At the resentencing, defendant was sentenced to an aggregate prison term of thirty-five years, with periods of parole ineligibility and parole supervision.[3]

Representing himself, defendant filed a PCR petition. Thereafter, he was assigned counsel and with the assistance of counsel he amended his petition and certifications in support of the PCR. The PCR court then heard arguments on the petition.

On October 30, 2024, the PCR court entered an order denying the petition and supported that ruling with a twenty-eight-page written opinion. In its opinion, the PCR court considered defendant's various arguments that his trial

---

[3] The State points out that the judgment of conviction (JOC) entered following the resentencing on October 22, 2021, incorrectly states that the aggregate sentence is thirty years. It asked us to remand the matter and direct the trial court to correct the JOC. That issue is not before us and, therefore, we decline the State's request. The State, however, can make an application to the trial court to correct the JOC.

counsel and appellate counsel had been ineffective. The PCR court then focused on defendant's main arguments, which included contentions that trial counsel had been ineffective in (1) not calling defendant's brother, D.W. (David), as a witness, and (2) not properly cross-examining Robin. The court also considered defendant's arguments that his counsel had been ineffective in not appealing the sentence imposed at resentencing.

Addressing the contentions regarding defendant's brother, the court considered a certification David had signed in October 2022, but found that the statements in the certification were inadmissible hearsay. The court also pointed out there was no evidence that trial counsel knew of the contentions, which David first raised in his certification dated October 27, 2022, years after the trial.

The PCR court also rejected defendant's arguments regarding Robin. In support of his PCR petition, defendant submitted a certification from Robin signed on October 25, 2022. In Robin's certification, she contended that she had not actually heard defendant state that he had shot someone and that the statement she had given to the police had not been accurately recorded. The PCR court determined Robin's 2022 certification did not demonstrate that trial counsel had been ineffective in his cross-examination because he had brought out some of the weaknesses in Robin's testimony and there was nothing in her

9

2022 certification that demonstrated her testimony at trial was inaccurate and not properly explored on cross-examination.

Finally, the PCR court rejected defendant's claim that he had directed counsel to appeal his resentencing, pointing out the claim was simply a bald assertion without factual support. Consequently, the PCR court denied the petition without an evidentiary hearing. Defendant now appeals from the October 30, 2024 order denying his petition.

## II.

On appeal, defendant makes two main arguments, the first of which has three sub-contentions. Specifically, defendant articulates his arguments as follows:

> POINT I – BECAUSE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR PCR.
>
> [A]   Trial Counsel was Ineffective in Failing to Call as a Witness [David].
>
> [B]   Trial Counsel was Ineffective in Failing to Fully Cross-Examine State's Witness, [Robin].
>
> [C]   Trial Counsel was Ineffective in Failing to File for an Appeal of the Re-Sentencing Imposed.[4]

---

[4] We have deleted two sub-arguments that discuss legal standards.

POINT II – IN THE ALTERNATIVE, BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, THE PCR COURT ERRED IN DENYING AN EVIDENTIARY HEARING.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test:  (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).  Under prong one, a defendant must establish "that counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

When a PCR court does not conduct an evidentiary hearing, appellate courts "conduct a de novo review of both the factual findings and legal conclusions of the PCR court."  State v. Harris, 181 N.J. 391, 421 (2004); see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (applying a de novo standard of review).  A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion.  State v. Vanness,

11

474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

A. Defendant's Claims Regarding Testimony from David.

Defendant asserts that his trial counsel was ineffective because counsel did not call defendant's brother David as a witness at trial. In his PCR petition, defendant asserts David would have shown that John "was not telling the truth" about what happened after the shooting. In that regard, defendant asserts that David would have testified that John told David defendant had told John that it was the victim who pulled the gun, not defendant. To support that contention, defendant submitted a certification from David dated October 27, 2022.

Having conducted a de novo review of the certification, the trial record, and the law, we agree with the PCR court that defendant failed to establish a prima facie showing of ineffective assistance of trial counsel based on the claim that counsel should have called David. There are two main flaws with defendant's argument.

First, David's proposed testimony was inadmissible, double hearsay. In his certification, David claims that he spoke with John on the night of July 22, 2012. He asserts that John told him that defendant had told John that during the attempted drug transaction, the victim pulled a gun out, defendant and the victim

12

"[tasseled] over the gun, and that is when the gun went off."  John's alleged statements to David are hearsay.  N.J.R.E. 801, 802, 805; see also Est. of Grieco v. Schmidt, 440 N.J. Super. 557, 564 (App. Div. 2015) (quoting N.J.R.E. 801(c)) (explaining hearsay is any "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").  Defendant's alleged statements to John are also hearsay because they are an attempt by defendant to offer his own statements through John.  Thus, those statements are not admissible as a statement by a party-opponent.  See N.J.R.E. 803(b)(1); One Step Up, Ltd. v. Sam Logistic, Inc., 419 N.J. Super. 500, 508 (App. Div. 2011) (explaining that "admissions of a party-opponent are admissible only where offered against the speaker").

Second, defendant failed to show prima facie evidence of prejudice. David's statements would have been subject to challenge because of his close relationship to defendant and because the statements were not corroborated by any other evidence.  Moreover, David's testimony would have merely repeated, albeit with some inconsistency, defendant's testimony, which the jury did not credit.  Indeed, defendant testified at trial that he had told John that Schiavetti had pulled a gun on him.  There was no showing that David's testimony would have persuaded the jury more than defendant's own testimony.

13

Finally, nowhere in his petition for PCR did defendant establish that his trial counsel knew of David's proposed testimony. Defendant was tried in 2015. David first submitted a certification with his proposed testimony seven years later in October 2022. Critically, there is no evidence that trial counsel knew of David's proposed testimony before or during trial.

In short, defendant failed to make a prima facie showing of either prong of the <u>Strickland</u> test regarding the proposed testimony from David.

B. The Claim Regarding Robin.

Next, defendant argues that his trial counsel was ineffective in cross-examining Robin. To support that claim, defendant submitted a certification signed by Robin on October 25, 2022. In her certification, Robin asserts that she did not hear defendant state that he had shot the victim and that defendant "never told me that he robbed or either tried to rob a Caucasian man."

The PCR court correctly recognized that Robin's statements in her certification were inconsistent with her testimony at trial. Consequently, there was no evidence that trial counsel was ineffective in his cross-examination of Robin because Robin only attempted to recant her trial testimony seven years after the trial ended.

14

Like the proposed testimony from David, Robin's new claims failed to establish the prejudice prong of Strickland. Robin's statements in her 2022 certification are inconsistent with both her trial testimony and the statement she gave to the police. While one might argue that her new proposed testimony should have been evaluated at an evidentiary hearing, such a hearing was not necessary in this case because there was no prima facie showing of prejudice. Robin's statements in her certification could not have been brought out on cross-examination because they were changes in her testimony and those changes only came to light seven years after the trial.

C.      The Claim Regarding Failure to File an Appeal of the Resentencing.

Defendant also asserts that his counsel was ineffective in failing to file an appeal from the sentence defendant received on remand. In support of that claim, defendant submitted a supplemental certification on November 27, 2022, asserting: "I wanted the sentence imposed in my case to be appealed. I told my attorney I wanted to appeal, however, it was never done and I do not know why."

Defendant's argument once again fails to satisfy the prejudice prong of Strickland. Defendant did not identify a viable ground for appealing the resentencing, which reduced his overall sentence by fifteen years. See State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Cummings, 321 N.J. Super.

154, 170 (1999) (explaining a defendant "must do more than make bald assertions that he [or she] was denied the effective assistance of counsel" for PCR)).

D.    No Need for An Evidentiary Hearing.

A defendant is entitled to an evidentiary hearing on a PCR petition only if: (1) he or she establishes "a prima facie case in support of [PCR]," (2) there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) "an evidentiary hearing is necessary to resolve the claims for relief." Id. at 354 (alteration in original) (quoting R. 3:22-10(b)). In making that showing, a defendant must "demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." State v. Marshall, 148 N.J. 89, 158 (1997); see also R. 3:22-10(b).

As our de novo review has established, defendant did not make a prima facie showing that his trial counsel was ineffective. Moreover, defendant failed to show a likelihood that his claims would succeed on the merits. Accordingly, the PCR court did not abuse its discretion in denying defendant an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-1809-24